UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID P. WALKER and RONDA J. WALKER, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) )   Cause No. 1:07-cv-1609- WTL-DML |
| UNITED STATES OF AMERICA, et al., | ) ) ) |
| Defendants. | ) |

### ENTRY ON THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTIONS TO STRIKE

This cause is before the Court on a motion filed by Defendant United States of America entitled Renewed and Supplemental Motion to Dismiss or for Summary Judgment (dkt. no. 56)[1], which the Court has treated as a motion for summary judgment,[2] and two related motions to

---

[1] The Plaintiffs amended their complaint after the USA filed its original motion to dismiss or for summary judgment, thereby necessitating the USA's "renewed and supplemental" motion.

[2] Both parties agree that two recent Seventh Circuit decisions require this Court to treat the USA's motion as a summary judgment motion rather than as a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Reynolds v. United States,* 549 F.3d 1108, 1111-12 (7th Cir. 2008); *Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008). *Reynolds* and *Parrott* make it clear that in this Circuit the question of whether sovereign immunity bars a claim because it falls under an exception to the Federal Tort Claims Act is not a jurisdictional issue, and therefore a motion to dismiss raising that issue is properly brought under Federal Rule of Civil Procedure 12(b)(6), not Rule 12(b)(1). In other words, the FTCA waives sovereign immunity with regard to–and thus gives federal courts jurisdiction over–claims arising out of the negligent act of government employees, but 28 U.S.C. § 2680(k) makes an exception for such claims that arise in a foreign country, and the Seventh Circuit has determined that the exception does not affect the federal courts' jurisdiction over such claims, but rather the viability of such claims. However, the Court is not convinced that the reasoning of *Reynolds* and *Parrott* applies to the bulk of the USA's arguments in this case, which rely not on the statutory exceptions to the FTCA enumerated in 28 U.S.C. § 2680, but rather on the fact that the FTCA's waiver of sovereign immunity simply does not apply to suits involving acts by government contractors. However, because the result is the same whether the

strike filed by the Plaintiffs (dkt. nos. 74 and 75).  The motions are fully briefed and the Court, being duly advised, **GRANTS** the USA's motion for summary judgment and **DENIES** the Plaintiffs' motions to strike for the reasons set forth below.

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor.  *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).  Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment."  *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

### *Factual Background*

Plaintiff David Walker alleges that he was injured while participating in a Weapons of

---

instant motion is reviewed under Rule 12(b)(1) or Rule 56, and because at least part of the USA's arguments implicate the discretionary function exception to the FTCA and therefore clearly are subject to the holdings in *Reynolds* and *Parrott*, the Court has considered the USA's alternative motion for summary judgment, which has been thoroughly briefed by the parties and is ripe for resolution.

Mass Destruction Law Enforcement Response Actions training course that his employer, the Indianapolis Metropolitan Police Department ("IMPD"),[3] required him to attend at the department's training facility in Indianapolis on August 31, 2006. The training in question was hosted by IMPD and run by Defendant EAI Corporation ("EAI").[4] EAI was under contract with the United States Department of Homeland Security's Center for Domestic Preparedness ("CDP") to provide certain training to state and local emergency responders, including training with respect to the conduct of activities in response to terrorist attacks or natural disasters.

EAI has been a contractor handling disaster response training for the federal government for many years. In 1997, Congress mandated and appropriated for training of local response personnel. The U.S. Department of Justice ("DOJ") was charged with directing and coordinating the training effort. Pursuant to its discretion, the DOJ elected to solicit a contract for the provision of the required training rather than utilizing federal personnel to conduct it. After the formation of the Department of Homeland Security ("DHS") in 2002, DHS replaced the DOJ as the agency responsible for the mandated training. In 2004, DHS awarded EAI a new contract, which requires EAI them to "provide all necessary personnel, equipment, materials, and services to the [CDP] . . . to support the training and training support mission requirements." As a part of those responsibilities, EAI was to provide three types of training: (1) resident training at federally furnished facilities in Alabama; (2) non-resident mobile training provided in conjunction with a requesting local authority at facilities provided by the local authority; and (3)

---

[3]At the time of the training course Walker's employer was the Indianapolis Police Department, which has since reorganized under the IMPD designation. For the sake of consistency, IMPD will be used to refer to Walker's employer throughout this Entry.

[4]EAI later merged with Defendant Science Applications International Corporation, Inc. For clarity's sake, the two are referred to interchangeably throughout this Entry as EAI.

indirect training the trainer programs. EAI has continued to provide all of the training services associated with the CDP operations and no federal employees are utilized as training instructors.

The specific training exercise that Walker alleges led to his injury involved how to conduct an arrest while wearing restrictive personal protective equipment. All of the instructors involved in the training were employees of EAI or consultants hired and paid by EAI.. Walker was asked by an instructor to play the role of a terrorist in a mock arrest made by another role-playing class participant. It was this other role-playing participant who, at the direction of an instructor, handcuffed Walker and allegedly injured him.

### *Motions to Strike*[5]

The Plaintiffs have filed motions to strike portions of two declarations submitted by the USA in support of its motion. First, the Plaintiffs object to portions of the first of two declarations submitted by F. Marion Cain III. Cain is a Senior Policy Analyst with the federal Emergency Management Institute and served as the Director of the CDP from August 2003 to July 2007 and as the Deputy Director of the CDP for the eight years prior to that. Plaintiffs question the sufficiency of Cain's personal knowledge with regard to the intent of the CDP in deciding to seek a contractor to address training responsibilities. However, Cain's second declaration[6] makes it clear that he was personally involved in making that policy decision. With

---

[5] The Court notes that it would have been preferable for the Plaintiffs to raise these arguments in their response brief rather than filing separate motions to strike. *See* Local Rule 56.1(f) ("Collateral motions in the summary judgment process, such as motions to strike, are disfavored. Any dispute regarding the admissibility or effect of evidence should be addressed in the briefs.").

[6] Cain's first declaration–the subject of the motion to strike–was filed in support of the USA's renewed motion; his second declaration was filed along with the USA's reply in support of that motion. The Court notes that the Plaintiffs had the opportunity to file a surreply to address any new information contained in Cain's second declaration, *see* Local Rule 56.1(d), but

respect to the Plaintiffs' argument that other statements in Cain's declaration are self-serving statements without support in the record or consist of legal argument rather than facts, the Court is comfortable in its own ability to sort out what is and what is not appropriately considered as evidence. The Plaintiffs' motion to strike portions of Cain's first declaration therefore is denied.

The Plaintiffs similarly move to strike certain portions of the first of three declarations[7] submitted by Richard Dickson. Dickson is currently the Assistant Director of Training Delivery at the CDP; from March 2004 through August 2008 he served as the Director of Student Services at the CDP. His duties included serving as the contracting officer's technical representative with regard to the contract between the CDP and EAI. The statements in his declaration that the Plaintiffs move to strike are: (1) that the Central Region Manager (an EAI employee) was the primary point of contact and coordinated with IMPD representatives for the provision of the training in question; (2) that the local jurisdictions whose students were involved in the training sessions were responsible for screening students; and, (3) that neither the CDP nor any other federal agency had any employees involved in the daily planning, supervision or control of the training course that Walker attended. As can be discerned from reading the totality of Dickson's three declarations, his close involvement with the monitoring of EAI's performance under the contract and his access to relevant documentation gave him ample personal knowledge to offer the statements at issue. Therefore, the Plaintiffs' motion to strike portions of Dickson's first declaration also is denied.

---

chose not to do so.

[7]The USA submitted Dickson's first declaration in support of its original motion to dismiss or for summary judgment; his second was filed along with the USA's renewed motion, and his third along with its reply brief.

*Discussion*

The Plaintiffs assert negligence claims against the USA in this case pursuant to the Federal Tort Claims Act ("FTCA"). Civil actions against the United States are barred unless Congress has specifically waived sovereign immunity for a particular type of action. *LaBonte v. United States*, 233 F.3d 1049, 1051 (7th Cir. 2000). In passing the FTCA, Congress provided such a waiver of immunity, providing for the exclusive jurisdiction of the federal courts over

> civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). An "employee of the government" includes, *inter alia,* "employees of any federal agency." 28 U.S.C. § 2671. The term "federal agency" expressly excludes "any contractor with the United States." *Id.* Thus, the United States is not liable for the actions of the employees of its independent contractors. *Alinsky v. United States,* 415 F.3d 639, 643-44 (7th Cir. 2005). Therefore, the USA argues, it is not subject to suit in this case because Walker's suit is premised on the actions of the employees of EAI, an independent contractor.

The Plaintiffs' response to this argument is two-fold. First, they note that they assert claims of negligence against the USA that are independent of any acts by EAI. Next, they argue that the USA maintained sufficient control over EAI, and specifically over the conduct of the August 31, 2006, training, that the EAI employees who provided the training were acting as agents of the USA. Each of these arguments is addressed, in turn, below.

*Claims Against the USA Directly (Counts I and II)*

Counts I and II of the Plaintiffs' Second Amended Complaint[8] are asserted against the USA only.  The Plaintiffs explain in their brief that they allege that the USA "is liable for its own negligence regarding the training program that it negligently organized, managed, supervised, and controlled."  Specifically, the Plaintiffs allege that the CDP was responsible for the training program and was negligent in the following ways:

- "failing to screen participants by their ability to perform safe arrest procedures and use proper handcuffing techniques";

- "failing to require use of participants with sufficient training in handcuffing techniques, and by using students in the training scenario without sufficient training to use self-defensive techniques, including handcuffing techniques"; and

- failing "to properly train participants in the proper use of self-defensive techniques, including handcuffing techniques, prior to utilizing such participants in the training scenario."

Plaintiffs' Response at 19.  The Plaintiffs make the following factual allegations in support of their conclusion that the CDP was responsible for the training program and had the duties that it allegedly failed to fulfill:

- "all instruction in the training program strictly adhered to the U.S. POI and Instructor and Student Manuals" which were "drafted and revised by the government with the assistance of EAI" and subject to the final approval of the CDP;

---

[8]Count I asserts a claim on behalf of David; Count II asserts Ronda's loss of consortium claim based on the same allegations.

- the USA "required the use of the final POI and two LERA training manuals and did not allow EAI to use any other written materials for the course outside of the CDP manuals";

- "[o]nly CDP employees administered and directed any deviations or modifications to class instruction and participant qualifications," and the "course instructor was required to deliver the lesson as written in the CDP manuals";

- the exercise in question "was approved in advance by the U.S. before it was used in training";

- the U.S. POI and manuals requires that the specific type of training exercise be conducted and "dictates the precise practical exercises the instructor must use for students to practice apprehending a suspect and handcuffing them to experience the physical limitations in PPE."

*Id.* at 19-21.  In other words, the Plaintiffs argue that the USA itself–not its independent contractor–designed and approved the manual that governed the training exercise and mandated that the manual be followed precisely, and therefore the USA is liable for the fact that the protocol set forth in the manual negligently failed to require screening of participants and/or proper training of participants.

The evidence of record simply does not support the Plaintiffs' argument.  Rather, the USA has submitted ample evidence that conclusively demonstrates that the task of researching and creating the manual and the training exercises contained therein was delegated to EAI by the USA.  The evidence cited to by the Plaintiffs shows only that the contract between the USA and EAI required the USA (specifically, the CDP) to review the final product and certify that it complied with the contract requirements and certain federal statutes, regulations, and policies.

That type of general review is not equivalent to the CDP creating the manual itself or taking responsibility for the content of the manual and does not make the USA liable for any negligence on the part of EAI with regard to the manual or the training exercises therein.[9]

Neither is there any support in the record for the Plaintiffs' assertion that the CDP had a duty to warn course participants such as David Walker regarding the training and qualifications (or lack thereof) of other course participants. To the extent that any such duty existed, that was clearly delegated by the USA to EAI along with all other responsibilities relating to the day-to-day operation of the training program. As discussed in more detail below, the evidence of record makes it clear that the CDP's responsibility was to oversee compliance with the contract generally; it did not have any responsibility for operational details such as screening participants, because those tasks were the responsibility of EAI. None of the evidence cited to by the Plaintiffs supports their assertion to the contrary.

*The USA's Liability for the Actions of EAI*

The Plaintiffs' remaining claims against the USA are premised on the Plaintiffs' argument that the USA can be held vicariously liable for the actions of EAI's employees. Whether or not a person is an independent contractor or an agent for purposes of the FTCA is a question of law. *Sullivan v. United States,* 21 F.3d 198, 201 (7th Cir. 1994). That question is resolved by examining the scope of control which the USA maintained over the "detailed physical performance of the contractor." *United States v. Orleans*, 425 U.S. 807, 813-14 (1976). The Plaintiffs recognize the distinction between independent contractor and agent and argue that the USA retained control–or at least reserved the right to control–the "day-to-day details and

---

[9]The Plaintiffs correctly concede that their claim that the USA was negligent in its choice of EAI as contractor is barred by the discretionary function exception to the FTCA.

means by which work was to be accomplished" by EAI under the contract and therefore an agency relationship existed.

To be sure, as discussed at length in the parties' briefs, the CDP had certain responsibilities under the contract and retained a certain amount of supervision over EAI's activities. For example, as previously noted, the CDP was responsible for certifying that the training manual complied with the contract. The CDP's responsibilities also included credentials review and approval of proposed key personnel and regular quality assurance meetings with EAI managers. This is no different from any federal contract; the government is always responsible for ensuring that its contractors are complying with the terms of their contracts. However, "[t]he question is not whether a contractor must comply with federal regulations and apply federal standards, but whether its day-to-day operations are supervised by the Federal Government." *Leone v. U.S.*, 910 F.2d 46, 50 (2nd Cir. 1990). None of the contractual responsibilities or rights of the CDP pointed to by the Plaintiffs indicate that the CDP was involved in–or even had the authority to be involved in–EAI's daily operations such that EAI's employees were agents of the USA rather than independent contractors.

The facts of *Leone* are instructive, because the relationship between the United States and its contractors in that case was very similar to that between the CDP and EAI here. *Leone* involved private physicians who contracted with the Federal Aviation Administration ("FAA") to act as Aviation Medical Examiners ("AMEs") and conduct federally mandated physicals of pilots. Pursuant to federal regulation, AMEs acted "under the general supervision of the Federal Air Surgeon." The AMEs' performance was continually evaluated by the FAA, which reviewed "(1) the adequacy of information the AME provide[d] on the medical examination forms; (2) the "error rate" in certification; (3) reports from the aviation community concerning the AMEs'

professional performance and personal conduct; (4) attendance at seminars; [and] (5) performance reports, including quarterly and annual performance summaries." *Id.* at 48. The FAA further provided each AME with "the Guide for Aviation Medical Examiners ("the Guide"). . . [which was] designed to provide all pertinent information and guidance needed to perform the duties and responsibilities delegated to each AME by the FAA" and which contained "step-by-step instructions for reviewing medical certificate applications and conducting physical examinations of the applicants." The court determined that "while the FAA acts generally as an overseer, it does not manage the details of an AME's work or supervise him in his daily duties. Indeed, neither the supervision provided by the Federal Air Surgeon nor the FAA procedures to evaluate the AMEs entail on-site review or day-to-day management. Accordingly, the FAA does not maintain the type of control over the AMEs that is required" to make the USA liable for the AMEs actions under the FTCA. *Id.* at 50.

The same is true in this case. The type of oversight responsibility that the CDP had over EAI's execution of the contract is not the type of control over the "detailed physical performance" necessary to convert a government contractor into a government agent. The USA therefore cannot be held liable for EAI's actions in this case.

### *Conclusion*

For the reasons set forth above, the USA's motion for summary judgment with regard to all of the Plaintiffs' claims against it is **GRANTED**.

SO ORDERED: 07/06/2009

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification