## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **DAVID P. WALKER, et al.,** | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Cause No. 1:07-cv-1609-WTL-DML |
| **UNITED STATES OF AMERICA, et al.,** | ) ) ) |
| Defendants. | ) ) |

## ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

Before the Court are six motions for summary judgment: (1) the Plaintiffs' Partial Motion for Summary Judgment (Docket No. 150)[1]; (2) Science Applications International Corporation's Motion for Summary Judgment against David Walker (Docket No. 156); (3) Science Applications International Corporation's Motion for Summary Judgment against Ronda Walker (Docket No. 162); (4) James McNair's Motion for Summary Judgment (Docket No. 164); (5) William Payne's Motion for Summary Judgment (Docket No. 179); and (6) Terry Griffith's Motion for Summary Judgment (Docket No. 200).[2] These motions are fully briefed, and the

---

[1] The Plaintiffs have moved to strike a surreply filed by Science Applications International Corporation because it is allegedly "untimely, exceeds the limit on the length of reply briefs, and consists of improper legal argument." Docket No. 205 at 1. The Plaintiffs' motion is **DENIED**. However, the Court assures the parties that in ruling on all of their motions it has drawn all reasonable inferences in favor of the nonmoving party and has viewed the disputed evidence in the light most favorable to the nonmoving party as required by FED. R. CIV. P. 56(c)(2).

[2] Defendant Griffith sought leave to file his summary judgment motion (Docket No. 201) in September. Although the Court never ruled on Griffith's motion, he proceeded to file a motion for summary judgment (Docket No. 200). Accordingly, Griffith's motion for leave to file is **DENIED AS MOOT**. The Court also notes that Griffith styled his motion as one for judgment on the pleadings, or in the alternative a motion for summary judgment. Because the Court has considered matters outside the pleadings in ruling on Griffith's motion, it has

Court, being duly advised, now **GRANTS IN PART AND DENIES IN PART** the Plaintiffs' motion and **DENIES** all of the Defendants' motions.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *see also* FED. R. CIV. P. 56(e)(2). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Methodist Med. Ctr. of Ill. v. Am. Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The non-moving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Wolf v. Northwestern Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001), *cert. denied*, 534 U.S. 1028 (2001). "[T]he court is not required to scour the record in search of evidence to defeat a motion for

---

construed his motion as one for summary judgment.

summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

In evaluating a motion for summary judgment, although the court draws all reasonable inferences from undisputed facts in favor of the nonmoving party and views the disputed evidence in the light most favorable to the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute; "instead, the nonmoving party must present definitely, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). "If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The fact that the parties have filed cross-motions for summary judgment does not alter the standard set forth in Federal Rule of Civil Procedure 56(c)(2). When evaluating each side's motion the court simply "'construe[s] all inferences in favor of the party against whom the motion under consideration is made.'" *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## II. BACKGROUND

David Walker was injured during a Weapons of Mass Destruction training class that was

3

held at the Indianapolis Police Department Training Academy in Indianapolis. The class, known formally as the Law Enforcement Protective Measures and Law Enforcement Response Actions Class ("LEPM/LERA Class"), was taught by Science Applications International Corporation ("SAIC").[3]

SAIC was hired by the United States Center for Domestic Preparedness ("CDP") to conduct various training programs, including the LEPM/LERA Class. Pursuant to the contract between CDP and SAIC, SAIC prepared most of the instructional materials for the LEPM/LERA Class. The development of these materials began with the Program of Instruction, which served as an abstract for the course. After this abstract was drafted, SAIC created two course manuals – one for the instructors and one for the students. The course manuals were then sent to CDP for approval. The CDP ultimately approved all of the LEPM/LERA Class materials.

SAIC was required to use the CDP-approved materials to teach the LEPM/LERA Class. SAIC could not deviate from the course manuals and could not modify the LEPM/LERA Class curriculum without CDP approval.

In 2006, the Indianapolis Police Department contacted CDP and requested a training course on the use of professional-grade personal protective equipment ("PPE"). CDP notified SAIC. SAIC then worked with individuals from the Indianapolis Police Department to schedule the LEPM/LERA Class.

The LEPM/LERA Class was held over a two day period in August 2006 and was taught by Defendants Terry Griffith, William Payne, and James McNair. The class consisted of lectures

---

[3] When Walker was injured Defendant EAI Corporation was a separate entity. In late 2007, EAI Corporation merged with SAIC. Because EAI Corporation no longer has a separate corporate existence the Court's Entry will refer only to SAIC.

and hands-on training scenarios. The training scenarios were used to familiarize the students with the PPE. Specifically, students were taught how to don PPE, how to doff PPE, and how to perform common law enforcement activities while wearing PPE. For example, students were instructed on the use of flex-cuffs[4] and were allowed to practice flex-cuffing each other while wearing PPE.

Walker was injured on the second day of the LEPM/LERA Class during a role playing scenario. Defendant McNair instructed Walker to play the part of an injured civilian who was unable to follow directions because he was deafened by a bomb blast. Two students acting as "good guys" placed Walker in a prone position and attempted to flex-cuff him. Instead of kneeling alongside Walker, one of the "good guys" remained standing as he began to flex-cuff Walker. As a result, Walker incurred a shoulder injury. Walker does not know who injured him and he did not report his injury to any of SAIC's instructors.

Walker and his wife ultimately filed suit against the United States. In 2008, they twice amended their complaint to add SAIC and its instructors – Terry Griffith, William Payne, Gary Richardson, James McNair, Jay Dotson, Russell Cartee, and Robert Hiatt – as Defendants. The Walkers' claims against Hiatt, Dotson, and Cartee were dismissed in May 2009. The United States was granted summary judgment in July 2009. The Walkers' claims against Richardson were dismissed in June 2010. Thus, all that remains are the Walkers' claims against SAIC, Griffith, Payne, and McNair.

### III. DISCUSSION

David Walker claims that SAIC and its instructors – Griffith, Payne, and McNair –

---

[4] Flex-cuffs are plastic nylon restraints that are used in lieu of metal handcuffs.

negligently injured his shoulder, effectively ending his career with the Indianapolis Police Department. Walker claims that the Defendants owed him a duty of safety, which they breached in various ways, resulting in his shoulder injury. In Indiana, a negligence claim requires: (1) a duty owed to the plaintiff by the defendant; (2) breach of that duty by allowing conduct to fall below the applicable standard of care; and (3) a compensable injury proximately caused by the defendant's breach of duty. *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1123 (Ind. 2010). Walker's wife, Ronda, brings a loss of consortium claim that is derivative of her husband's claim. *Durham ex rel. Estate of Wade v. U-Haul Int'l*, 745 N.E.2d 755, 764 (Ind. 2001). Therefore, if David's negligence claim fails, Ronda's claim fails as well. *Id*.

### A. Employees or independent contractors?

Before addressing David's negligence claim, the Court must first determine whether SAIC's instructors were independent contractors or employees. Indiana has a "'long-standing general rule . . . that a principal is not liable for the negligence of an independent contractor.'" *Moberly v. Day*, 757 N.E.2d 1007, 1009 (Ind. 2001) (quoting *Bagely v. Insight Commc'ns Co.*, 658 N.E.2d 584, 586 (Ind. 1995)). Therefore, if Griffith, Payne, and McNair (collectively "the Instructors") were independent contractors, then SAIC cannot be held liable for their allegedly negligent conduct. Because the underlying facts are undisputed the Court can determine as a matter of law whether the Instructors were employees or independent contractors.

In *Moberly*, the Indiana Supreme Court stated that it has typically "applied a ten-factor analysis described in the RESTATEMENT (SECOND) OF AGENCY § 220 (1958) to distinguish employees from independent contractors." *Moberly*, 757 N.E.2d at 1009-10. The relevant factors are:

6

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employee is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relationship of master and servant; and
(j) whether the principal is or is not in business.

*Id.* at 1010. In conducting the employee-independent contractor analysis courts consider all ten factors and no single factor is dispositive. *Id*.

### 1. Control.

The comments to the Restatement explain that "control or right to control the physical conduct of the person giving service is important and in many situations is determinative." RESTATEMENT (SECOND) OF AGENCY § 220(1) cmt. d (1958). "An employee/servant is one 'employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.'" *Walker v. Martin*, 887 N.E.2d 125, 131 (Ind. Ct. App. 2008) (quoting RESTATEMENT (SECOND) OF AGENCY § 220(1) (1958)). "Conversely, an independent contractor generally controls the method and details of his task and is answerable to the principal as to results only." *Id*.

In the instant case the Instructors were required to teach the LEPM/LERA Class precisely as provided by the instructor's manual. The Instructors were not allowed to deviate from the SAIC-designed, CDP-approved, curriculum. In short, the Instructors lacked control over the

7

details of their work; therefore, this factor indicates that they were SAIC's employees.

### 2. Distinct occupation or business.

"The second factor considers whether or not the one employed is engaged in a distinct business or occupation." *Walker*, 887 N.E.2d at 132. If a worker has his or her own business then "[t]his factor weighs in favor of [his or] her status as an independent contractor." *Guillaume v. Hall Farms, Inc.*, 914 N.E.2d 784, 789 (Ind. Ct. App. 2009).

Here, the Instructors had jobs separate and apart from their positions with SAIC. Griffith worked for the Oregon Disaster Medical Team and was also the President of Welcorp. Docket No. 154 Ex. 3 at 43. McNair was a Battalion Chief with the Indianapolis Fire Department. Docket No. 197 Ex. 4 at 2. In fact, the only Defendant who did not have other employment in August 2006, when Walker was injured, was Payne, who retired from his position with the Huntsville Police Department in June 2006. Docket No. 197 Ex. 5 at 6. Thus, with respect to McNair and Griffith, this factor weighs in favor of independent contractor status. However, as to Payne, this factor tips slightly in favor of employee status.

### 3. Kind of occupation.

"This third factor focuses on whether the kind of occupation involved consists of work usually done under the direction of an employer or by a specialist without supervision." *Walker*, 887 N.E.2d at 132. Typically courts conclude that unsupervised specialists are independent contractors whereas closely-monitored generalists are employees.

In the instant case, the undisputed facts are that the Instructors were not permitted to deviate from the SAIC-designed, CDP-approved, curriculum. Because the Instructors were told what to teach, how to teach it, and when to teach, this factor tips in favor of employee status.

8

### 4. Skill required.

"The fourth factor considers the skill required by the particular occupation at issue. Unskilled labor is usually performed by employees, while skilled labor is often performed by independent contractors." *Walker*, 887 N.E.2d at 132. Here, the Plaintiffs concede that the Instructors were skilled laborers who had "ten years experience in their professional field and had to be certified and approved by the U.S." Docket No. 146 at 19. Accordingly, this factor indicates that the Instructors were independent contractors.

### 5. Source of instrumentalities, tools, and place of work.

The comments to the Restatement explain that "[t]he fact that a worker supplies his own tools is some evidence that he is not [an employee]." RESTATEMENT (SECOND) OF AGENCY § 220(2) cmt. k (1958). "On the other hand, if the worker is using his employer's tools or instrumentalities, especially if they are of substantial value, it is normally understood that he will follow the directions of the owner in their use, and this indicates that the owner is [an employer]." *Id.*; *see also Moberly*, 757 N.E.2d at 1012 (citing comment k with approval).

Here, SAIC provided the course manuals that the Instructors used to teach the LEPM/LERA Class. SAIC also provided the PPE used in the training scenarios. SAIC's assertion that all of the "training materials were approved by the U.S./CDP" and that "[t]here were no 'instrumentalities,' 'tools,' 'training equipment,' or other materials provided by SAIC organically that did not originate from the U.S./CDP" confuses the issue. Docket No. 196 at 23. The issue is not who approved the training materials or who gave them to SAIC – the issue is whether the Instructors or SAIC supplied the items necessary to teach the course. Because SAIC provided the tools and instrumentalities for the LEPM/LERA Class, this factor indicates that the

Instructors were employees.

### 6. Length of employment.

With respect to the sixth factor, the comments to the Restatement explain: "If the time of employment is short, the worker is less apt to subject himself to control as to details and the job is more likely to be considered his job than the job of the one employing him." RESTATEMENT (SECOND) OF AGENCY § 220(2) cmt. j (1958). In other words, a long-term relationship, especially a long-term relationship over a considerable amount of time with regular hours, can indicate employee status, *see Walker*, 887 N.E.2d at 133. In contrast, short-term employment favors finding that an individual is an independent contractor. *See Guillaume*, 914 N.E.2d at 790.

In the instant case the Instructors had a long-term relationship with SAIC. However, nothing in the record indicates that the Instructors worked for SAIC for a continuous and uninterrupted period of time. The Plaintiffs' assertion that "[s]ervice was continuous for the [I]nstructors," Docket No. 146 at 20, is not supported by the record. Given the absence of evidence as to this factor, the Court concludes that it is a nullity and does not influence this Court's decision one way or the other.

### 7. Method of payment.

The Restatement explains that if payment is made by the job and not by the hour, then an individual is likely an independent contractor. *See* RESTATEMENT (SECOND) OF AGENCY § 220(2) cmt. j (1958); *see also Guillaume*, 914 N.E.2d at 790 (a set rate of payment is more typical of an independent contractor). In *Walker*, the court explained that "[s]poradic payments in lump sum amounts for each job performed, instead of payments by the hour or on a weekly

basis are more typical of an independent contractor than an employee." *Walker*, 887 N.E.2d at 133.

Here, the Plaintiffs conceded that "[t]he method of payment factor . . . weighs toward an independent contractor finding." Docket No. 146 at 20. "SAIC paid the instructors for each day of training rather than in the form of a salary or an hourly wage." *Id*. Accordingly, this factor indicates that the Instructors were independent contractors.

### 8. SAIC's regular business.

"'This factor considers whether or not the work at issue is part of the regular business of the employer.'" *Guillaume*, 914 N.E.2d at 790 (quoting *Walker*, 887 N.E.2d at 133). In this case, SAIC conducted the LEPM/LERA Class where Walker was injured. *See* Docket No. 157 ¶ 10. SAIC also admits that pursuant to its contract with the United States, it "provide[d] training for various CDP classes." *Id*. ¶ 11. As teachers of the LEPM/LERA Class, the Instructors were an integral part of SAIC's business. Accordingly, this factor weighs in favor of employee status.

### 9. The belief of the parties.

The parties' belief about the nature of their relationship is "not determinative . . . except insofar as such belief indicates an assumption of control by the one and submission to control by the other." RESTATEMENT (SECOND) OF AGENCY § 220(2) cmt. m (1958). The record indicates that the Instructors all classified themselves as consultants or subcontractors – not employees. *See* Docket No. 197 Ex. 4 at 4; Docket No. 197 Ex. 5 at 3. Nor did SAIC consider the Instructors employees. *See* Docket No. 196 at 26. Thus, although this factor is of little import, it indicates that the Instructors were independent contractors.

### 10. Whether SAIC is in business.

The record indicates that SAIC was in the business of conducting training classes for CDP. This factor supports finding that the Instructors were employees.

Having considered all ten factors, and having viewed the evidence in the light most favorable to SAIC, the Court concludes that the Instructors were employees. Although this is a close call, SAIC exercised a great deal of control over the Instructors with respect to the delivery of the LEPM/LERA Class. SAIC required the Instructors to teach the class precisely as provided in the instructor's manual and the Instructors could not deviate from the approved curriculum. This type of control and supervision indicates employee status.

### B. Negligence.

Having concluded that the Instructors were SAIC employees, the Court now turns to David Walker's negligence claim. To prevail on his claim, Walker must show: "(1) duty owed to the plaintiff by defendant, (2) breach of duty by allowing conduct to fall below the applicable standard of care, and (3) compensable injury proximately caused by defendant's breach of duty." *Kephart*, 934 N.E.2d at 1123.

#### 1. Duty.

"Absent a duty there can be no negligence or liability based upon the breach." *Id*. "In cases in which the existence of a duty is not previously established . . . Indiana courts analyze three factors in determining whether to impose a duty at common law: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind. Ct. App. 2004).

In this case, Walker alleges that SAIC owed him a "duty to provide safe training."

12

Walker claims that "SAIC assumed the duty to provide [a] safe training program for the students by its contract with the US and by its conduct." Docket No. 146 at 11. However, none of the parties cite any Indiana case law recognizing a duty to provide safe training, nor has the Court's own research revealed the existence of such a duty. Accordingly, the Court must apply the three-part test to determine whether to impose a common law duty of reasonable care on SAIC. This determination is one of law and is appropriate for the Court to consider at this juncture. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991).

### a. The relationship between the parties.

"'In determining whether a relationship exists that would impose a duty,' the Court considers "'the nature of the relationship, a party's knowledge, and the circumstances surrounding the relationship.'" *Bowman ex rel. Bowman v. McNary*, 853 N.E.2d 984, 990 (Ind. Ct. App. 2006) (quoting *Downs v. Panhandle Eastern Pipeline Co.*, 694 N.E.2d 1198, 1203 (Ind. Ct. App. 1998)). "A duty of reasonable care is not owed to the world at large, but must arise out of a relationship between the parties." *Id*. Here, by virtue of his enrollment in the LEPM/LERA Class, there was a relationship between SAIC and Walker. The existence of this relationship tips in favor of finding that SAIC owed Walker a duty of reasonable care.

### b. The reasonable foreseeability of harm.

The foreseeability component of the duty analysis is a lesser inquiry than the foreseeability component of proximate cause. *Williams*, 809 N.E.2d at 477. "'[T]he foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.'" *Id*. (quoting *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996)). In this case, SAIC was aware

that participants of the LEPM/LERA Class could incur physical injuries. *See* Docket No. 157 at 46 ("[T]here is no dispute that SAIC warned the U.S./CDP about the potential dangers of the LERA Class. In fact, in this case, SAIC warned the U.S./CDP about the *exact* type of injury allegedly sustained by Mr. Walker, in the *exact* portion of the LERA Class in which Mr. Walker sustained such an injury."). Given that SAIC acknowledges that it anticipated that students in the LEPM/LERA Class could incur injuries including muscle strains, abrasions, and contusions during the role playing scenarios, Walker was a foreseeable plaintiff who incurred a reasonably foreseeable injury. This factor also weighs in favor of finding that SAIC owed Walker a duty of reasonable care.

### c. Public policy concerns.

"'Duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of public policy which lead the law to say that the plaintiff is entitled to protection.'" *Williams*, 809 N.E.2d at 478 (quoting *Webb*, 575 N.E.2d at 997). "Various factors play into this policy consideration, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, and the moral blame attached to the wrongdoer." *Id.* Imposing a duty on SAIC in this case would not excessively complicate administration of the LEPM/LERA Class. Moreover, as a large corporation, SAIC seems more able to bear the risk of loss than Walker. Accordingly, this factor also supports imposing a duty of reasonable care on SAIC.

### 2. Breach and proximate cause.

Having concluded as a matter of law that SAIC owed Walker a duty of reasonable care, Walker has satisfied the first element of his negligence claim. However, there are issues of

material fact affecting the other two analyses – breach of duty and injury proximately caused by the defendant's breach. For example, Walker alleges that SAIC breached its duty of reasonable care by permitting Indianapolis Airport Authority officers ("Airport Officers") to enroll in the LEPM/LERA Class. Although SAIC does not deny that it allowed Airport Officers to enroll in the class, it denies that their inclusion was a breach of any duty owed to Walker. SAIC also asserts that the inclusion of the Airport Officers did not proximately cause Walker's injury, as none of these individuals participated in the role playing scenario during which Walker incurred his injury. These issues, and others like them are particularly fact-sensitive and are thus inappropriate for the Court to decide on summary judgment. Indeed, summary judgment is generally inappropriate in negligence cases because issues of causation and reasonable care "are particularly fact sensitive and are governed by a standard of the objective reasonable person – one best applied by a jury after hearing all of the evidence." *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004).

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Partial Motion for Summary Judgment (Docket No. 150) is **GRANTED IN PART AND DENIED IN PART**. SAIC's Motion for Summary Judgment against David Walker (Docket No. 156) is **DENIED** as is SAIC's Motion for Summary Judgment against Ronda Walker (Docket No. 162). James McNair's Motion for Summary Judgment (Docket No. 164), William Payne's Motion for Summary Judgment (Docket No. 179), and Terry Griffith's Motion for Summary Judgment (Docket No. 200) are also all **DENIED**.

SO ORDERED: 12/15/2010

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Christopher Allen Cage
Cage Law Office
ccage@clwlaw.org

Russell B. Cate
Campbell Kyle Proffitt LLP
rcate@ckplaw.com

Thomas E. Kieper
United States Attorney's Office
tom.kieper@usdoj.gov

Michael Edward Morken
mmorken@hotmail.com

Richard A. Smikle
Ice Miller LLP
richard.smikle@icemiller.com

Rabeh M. A. Soofi
Ice Miller LLP
rabeh.soofi@icemiller.com

William Edwin Wendling Jr.
Campbell Kyle Proffitt LLP
wwendling@ckplaw.com

Terry Griffith
61246 Ladera Road
Bend, OR 97702

William E. Payne Jr.
2807 Irwin Road
Huntsville, AL 35801