# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID P. WALKER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Cause No. 1:07-cv-1609-WTL-DML |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ENTRY ON MOTION FOR RECONSIDERATION

Before the Court is Defendant Science Applications International Corporation's Motion for Reconsideration (Docket No. 220). This motion is fully briefed, and the Court being duly advised, now **GRANTS** the motion and reconsiders its prior ruling.

## I. BACKGROUND

David Walker was injured during a Weapons of Mass Destruction training class that was held at the Indianapolis Police Department Training Academy in Indianapolis. The class, known formally as the Law Enforcement Protective Measures and Law Enforcement Response Actions Class ("LEPM/LERA Class"), was taught by Science Applications International Corporation ("SAIC").[1]

SAIC was hired by the United States Center for Domestic Preparedness ("CDP") to conduct various training programs, including the LEPM/LERA Class. Pursuant to the contract between CDP and SAIC, SAIC prepared most of the instructional materials for the LEPM/LERA

---

[1] When Walker was injured Defendant EAI Corporation was a separate entity. In late 2007, EAI Corporation merged with SAIC. Because EAI Corporation no longer has a separate corporate existence the Court's Entry will refer only to SAIC.

Class. The development of these materials began with the Program of Instruction, which served as an abstract for the course. After this abstract was drafted, SAIC created two course manuals – one for the instructors and one for the students. The course manuals were then sent to CDP for approval. The CDP ultimately approved all of the LEPM/LERA Class materials.

SAIC was required to use the CDP-approved materials to teach the LEPM/LERA Class. SAIC could not deviate from the course manuals and could not modify the LEPM/LERA Class curriculum without CDP approval.

The LEPM/LERA Class was held in Indianapolis in August 2006. Walker was injured on the second day during a role playing scenario. Walker and his wife ultimately filed suit against the United States. In 2008, they twice amended their complaint to add SAIC and its instructors as Defendants. The Walkers' claims against four of the instructors have been dismissed and in July 2009, the Court granted the Government's motion for summary judgment. In addition, in December 2010, the Court denied SAIC's motion for summary judgment; however, that entry did not discuss the government contractor defense. Accordingly, SAIC has moved for reconsideration as to that defense only.

## II. DISCUSSION

In *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), the Supreme Court set out the government contractor defense. The Court held that government contractors cannot be found liable for state law violations when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id*. at 512. The first two factors "assure that the design feature in

question was considered by a Government officer, and not merely by the contractor itself." *Id*. at 512.

The Seventh Circuit addressed the government contractor defense in *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992 (7th Cir. 1996). The court explained that "the government contractor defense depends significantly on the extent of government participation in the design of the product in question." *Id*. at 996. Specifically, "the first prong of the *Boyle* test – whether the government has 'approved reasonably precise specifications' – involves a number of different considerations." *Id.* at 998. In *Oliver*, the court was thus required to determine "whether, and to what extent, the Marine Corps delegated discretion over the design of the [product] to Oshkosh." *Id*. The court also had to "discern whether the Marine Corps' approval of the design was meaningful, or merely a formality, and whether the specifications at issue were reasonably precise." *Id*. In conducting this analysis the court stated that the government contractor defense

> is available where "review [of the project] involved, *inter alia*, [the contractor's] submission of detailed drawings at various progressive stages of the design, critical design reviews where [government] engineers critiqued [the contractor's] work, and, finally, the production of prototype models tested and evaluated for months by the [government] for its actual performance."

*Id.* (quoting *Stout v. Borg-Warner Corp.*, 933 F.2d 331, 336 (5th Cir. 1991)). Also relevant is whether the "design of the [project] was the product of a 'continuous back and forth' between the government and the contractor." *Id*. (quoting *Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1320 (11th Cir. 1989)). In short, the "'salient fact of governmental participation in the various stages of the [equipment's] development . . . establishes the [government] contractor defense.'" *Id.* (quoting *Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698, 700-01 (4th Cir. 1991)).

3

In *Oliver*, because "Oshkosh and the Marine Corps worked closely together on the development of the [product], from its planning stages through full production," and because the Government proposed design changes that effected the product's final design, the contractor satisfied the first prong of the government contractor defense. *Id.* Moreover, "the various stages of Marine Corps approval exceeded mere rubber stamping of Oshkosh's work." *Id.* at 999 (citing *Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1480 (5th Cir. 1989)). Of course, had the approval been merely rubber stamping, the defense would not have been available. "'[A]pproval' under the *Boyle* defense requires more than a rubber stamp." *Trevino*, 865 F.2d at 480. Accordingly, "[w]hen the government merely accepts, without any substantive review or evaluation, decisions made by a government contractor, then the contractor, not the government, is exercising discretion." *Id*.

In the instant case, SAIC claims that it satisfies the first (and indeed all) of the elements of the government contractor defense. In its brief, SAIC states: "Walker's claims arose out of SAIC's performance of the reasonably precise specifications approved by the U.S./CDP" and "because SAIC conformed to the U.S./CDP's specifications in delivering the LERA/LEPM Class," it satisfies the first prong of the *Boyle* test.

However, the evidence of record does not support SAIC's assertion that the Government was actively involved in developing the LERA/LEPM Class. The Court has already concluded that "the task of researching and creating the [training] manual and the training exercises contained therein was delegated to [SAIC] by the USA." Docket No. 107 at 8. "[T]he contract between the USA and [SAIC] required the USA (specifically, the CDP) to review the final product and certify that it complied with the contract requirements and certain federal statutes,

4

regulations, and policies." *Id*. "That type of general review is not equivalent to CDP creating the manual itself or taking responsibility for the content of the manual." *Id*. at 9.

Moreover, SAIC has not presented any evidence whatsoever to support its assertion that the Government was actively involved in developing the LERA/LEPM Class. At most, the Government reviewed the completed course manual. This is not the kind of meaningful participation or active approval of a program that the *Boyle* test requires. Indeed, SAIC seems to misunderstand the *Boyle* test, as SAIC repeatedly argues that because it did not have either the power or the authority to deviate from the LERA/LEPM Class curriculum, it is entitled to claim the government contractor defense. This is not the inquiry required under the first prong of *Boyle*. Instead, SAIC needed to present evidence showing that the Government was actively involved in the development of the LERA/LEPM Class curriculum. Having failed to do so, SAIC has not satisfied the first prong of the *Boyle* test and it is not entitled to immunity under the government contractor defense.

## CONCLUSION

Having **GRANTED** SAIC's Motion for Reconsideration (Docket No. 220) and reconsidered its prior ruling, the Court now reaffirms its conclusion that SAIC's Motions for Summary Judgment (Docket Nos. 156 & 162) were properly **DENIED**.

SO ORDERED: 03/14/2011

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Christopher Allen Cage
Cage Law Office
cagelaw@comcast.net

Russell B. Cate
Campbell Kyle Proffitt LLP
rcate@ckplaw.com

Thomas E. Kieper
United States Attorney's Office
tom.kieper@usdoj.gov

Michael Edward Morken
mmorken@hotmail.com

Richard A. Smikle
Ice Miller LLP
richard.smikle@icemiller.com

Rabeh M. A. Soofi
Ice Miller LLP
rabeh.soofi@icemiller.com

William Edwin Wendling Jr.
Campbell Kyle Proffitt LLP
wwendling@ckplaw.com